# PRICE *v.* STATE OF MARYLAND

[No. 343, September Term, 1970.]

*Decided April 16, 1971.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Paul A. Smith, Sr.,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Appellant Price was convicted in a non-jury trial of arson (Maryland Code (1971 Repl. Vol.), Art. 27, sec. 408), and murder in the first degree (Code (1971 Repl.

Vol.), Art. 27, sec. 408), and sentenced to concurrent terms of life for the murder and ten years imprisonment for the arson. He contends on appeal that his confession was involuntary and its admission into evidence over his objection constituted reversible error, and that his conviction on the arson count merged into the felony murder count, thereby precluding separate sentences for the two offenses.

The evidence at trial showed that as the result of the fire bombing of a restaurant during the April 6, 1968 riots in Baltimore, one Lewis Albrecht was trapped in the building and died of carbon monoxide asphyxia. Appellant was arrested under a warrant on April 29, 1968, by Sergeant Robert Clarke of the Baltimore City Police Department and was charged with the crime. He was immediately subjected to interrogation by Captain James Cadden, in the presence of Clarke. Capt. Cadden and Sgt. Clarke both testified on direct examination that the appellant was given the full panoply of *Miranda* warnings, that he stated that he understood them, signed a waiver thereof, and within an hour after the interrogation began, signed a statement admitting his involvement in the crime. Both police officers testified that there were no threats, promises, or inducements made to the appellant to obtain his confession. Sgt. Clarke testified on direct examination that neither he nor anybody in his presence told the appellant that the court would go easier on him if he made a statement, and that he was present during the entire interrogation except for a short time when he went to secure the services of a police stenographer to record the appellant's statement.

The appellant testified only for the limited purpose of attacking the voluntariness of the confession. He particularly emphasized in his testimony that he had been denied his right to counsel and that his confession had been obtained as a result of an inducement, thereby violating the dictates of *Miranda v. Arizona,* 384 U. S. 436, 467-479, 86 S. Ct. 1602 (1966).

After reviewing the evidence, the trial judge found the confession to have been voluntarily made and admitted it in evidence. Specifically, the court found as a fact that the *Miranda* rights had been given to the appellant, that he understood them, signed a waiver thereof, and thereafter gave a signed statement. The court stated that it did not believe the appellant's testimony that he could not read or write. The trial judge also stated that while the appellant had testified that "somebody told him that if he would make a statement, it would be easier for him", this statement, of itself, would not destroy the voluntariness of the confession.[1]

Price appealed to the Court of Special Appeals, and in an unreported per curiam opinion filed June 22, 1970 (No. 352, September Term, 1969), the court affirmed the judgments and sentences of the trial court. We granted the appellant's petition for a writ of certiorari on October 15, 1970.

We are asked to determine in this appeal (1) whether the arson conviction should merge into the conviction for felony murder, and (2) whether there was legally sufficient evidence indicating that the appellant's confession was voluntary.

## I. MERGER

The question of merger of offenses has arisen in a prodigious number of cases in Maryland and throughout the country in a wide variety of factual situations. The general principles have been discussed at diverse times in terms of merger of offenses, former jeopardy, and divisibility of offenses in the same transaction. See *Veney v. State,* 227 Md. 608, 611-612, 177 A. 2d 883 (1962). Somewhat curiously, there are comparatively few arson-murder cases to be found in which the defendant was convicted of both offenses, and almost none in which the

---

1. The appellant's actual testimony was that the police told him that if he made a statement "it won't do you no harm in the courtroom, something like that", and it is apparent that the court had reference to that statement.

question of the merger of the two offenses has been raised or discussed on appeal.[2]

The modern test generally applied in Maryland to the question of merger of offenses is "whether one crime necessarily involves the other." *Parker v. State,* 7 Md. App. 167, 195, 199, 254 A. 2d 381 (1969). In *Parker,* when faced with a question of whether or not a conviction of robbery merged into a conviction of felony murder, the Court of Special Appeals said:

> "We think that the doctrine of merger is not applicable here because murder and robbery are separate and distinct offenses. Murder is homicide committed with malice aforethought, *Perkins, Criminal Law,* (1957) ch. 2, § 1, p. 30; it is malice which distinguishes murder from manslaughter. *Stansbury v. State* [218 Md. 255], 260. As 'murder in the first degree' is not a crime as such but merely a classification of murder, that the status of a first degree classification may be attained by proof that the murder was committed during the perpetration of a robbery, does not make robbery an essential element of murder and it follows that murder does not necessarily involve robbery." 7 Md. App. 199.

*Lynch v. State,* 9 Md. App. 441, 265 A. 2d 283 (1970) was a related case in which one of the appellant's codefendants had been convicted of felony murder arising out of the burning of the same building in the same incident

2. There have, however, been some. In Maryland, the recent case of Lynch v. State, 9 Md. App. 441 (1970) is one, and it will be discussed in the course of this opinion. In Cooper v. State, 13 N.J.L. 361 (N. J. Sup. Ct. 1833) the question arose in the form of a discussion of whether a prior conviction for arson would bar a later prosecution for the murder arising out of the arson, the New Jersey court holding that the later prosecution was barred. The opposite result was reached in Green v. U. S., 236 F. 2d 708 (D. C. Cir. 1956), rev'd on other grounds, 355 U. S. 184 (1957), a case in which the court discussed Cooper v. State, dismissed the reasoning of that case, and held that the later prosecution for murder in Green v. U. S. was not barred because it required proof in addition to that required to sustain an arson conviction. See generally "Earlier Prosecution for Offense During Which Homicide Was Committed as Bar to Prosecution for Homicide", 11 A.L.R.3d 834, 838-839 (1967).

which forms the basis of the case at bar.[3] In *Lynch*, the Court of Special Appeals specifically adopted the rationale of *Parker v. State* and paraphrased the statement found in *Parker* as follows:

> "* * * Murder and the burning of a storehouse are separate and distinct offenses. That the status of a first degree classification may be attained by proof that the murder was committed during the commission of a burning of a storehouse does not make the burning an essential element of murder and it follows that murder does not necessarily involve the burning." 9 Md. App. 446.

The Court of Special Appeals, in its per curiam opinion in the case at bar relied exclusively on the reasoning set forth in *Lynch v. State, id.*, and declared that the two offenses do not merge. We agree, but not for the reasons set forth in *Lynch v. State.*

Appellant contends that "the same alleged act constitutes both offenses", that act consisting of "throwing a bucket of gasoline into the already burning building." He notes that there is "an identity of time, place, and circumstances" and that "the facts necessary to prove arson are essential ingredients in establishing felony murder."

Because of the somewhat unique facts before us, we cannot agree with the Court of Special Appeals' reasoning in *Lynch* that the murder, because it was committed during the burning of a storehouse, "does not make the burning an essential element of murder and it follows that murder does not necessarily involve the burning." 9 Md. App. 446. That reasoning, although applicable to the robbery-murder in *Parker v. State, supra,* does not apply equally well to an arson-murder, where the burning of the building was the only act involved. Indeed, in *Parker v. State,* the Court of Special Appeals stated:

---

3. Lynch was charged with felony murder in the burning of a storehouse (Code, Art. 27, sec. 409) rather than arson.

"* * * Nor do murder and robbery arise from the same act; the act of taking property from a person by means of force and fear is separate and distinct from the act of firing shots that kill him, even though each is a part of one general transaction and even though evidence as to the robbery is admissible as to the murder." 7 Md. App. 199.

Were we of the opinion that the only consideration legitimately to be discussed in merger questions is whether or not the two offenses stem from a single act, we might then have to agree with the appellant and rule that the two offenses merged. However, we think that there exists an additional consideration, and that the doctrine of merger is not meant to prevent separate convictions for felony murder and the underlying felony of arson. The generally accepted test for merger of offenses might appear to dictate that the offenses in the case at bar be merged. However, the test as normally set forth leaves unstated a very basic consideration, which may be termed the "thrust" of the offenses being considered. In a very real sense, there was more than one victim affected by the appellant's single criminal act of throwing a bucket of gasoline on a burning building.

Accordingly, in the instant case, we hold that in order for there to have been a merger of the two crimes, there would have had to have been more than just a single criminal adventure. There would have had to have been a single, indivisible criminal act in which the elements essential to the proof of the greater offense necessarily included those required to establish the lesser offense, and the alleged criminal act would have had to have been directed either at a person or at property, but not both at the same time, and having been against both, the offenses did not merge.

Thus, where the offenses in question consist of separate and distinct acts (e.g., robbing and shooting), even though part of a single "transaction" or criminal ad-

venture, conviction on both counts is proper. *McChan v. State,* 9 Md. App. 311, 316, 264 A. 2d 130 (1970) ; *Parker v. State, supra.* Compare *Melville v. State,* 10 Md. App. 118, 126, 268 A. 2d 497 (1970). And, where the elements essential to proof of the greater offense (e.g., assault with intent to murder) do not necessarily include the elements required to establish the lesser offense (e.g., attempted robbery with a deadly weapon) conviction on both counts is proper. *Brown v. State,* 8 Md. App. 462, 467, 260 A. 2d 665 (1970), and cases cited. Compare *Smith v. State,* 6 Md. App. 114, 117-118, 250 A. 2d 272 (1969) and *Thomas v. State,* 3 Md. App. 101, 105, 238 A. 2d 558 (1968). Similarly, where the same general transaction affects different victims, the offenses would not merge. *Melville v. State, supra,* at 126; *Wallace v. State,* 9 Md. App. 131, 262 A. 2d 789 (1970). And where, as in the case at bar, there are distinct offenses directed against property (arson) and against an individual (murder), even though arising out of a single criminal adventure, they are separate and parallel offenses, neither being a "lesser included" offense within the other, and conviction on both counts is proper.

Before leaving this discussion, we would comment briefly on *Melville v. State,* 10 Md. App. 118, 268 A. 2d 497 (1970). Involved in that case was the state prosecution of the "Catonsville Nine" on local charges resulting from the now-famous protest at the Catonsville Selective Service Local Board #33 on May 17, 1968. In discussing the possible merger of offenses in that incident, the Court of Special Appeals said:

"* * * The question is whether the conviction for the assault and battery of Mrs. Murphy must be vacated as merging with the conviction of the robbery of Mrs. Murphy. The evidence established that the violence involved in the robbery was actual violence to the person of Mrs. Murphy. Father [Philip] Berrigan and Mr. [George] Mische physically restrained Mrs. Murphy and were involved in a struggle for pos-

session of the wire basket as a result of which Mrs. Murphy was injured. The element of violence in the robbery having been the same act out of which the assault and battery conviction arose we find that appellants' assault and battery convictions * * * must be vacated." 10 Md. App. 126.

The two convictions in *Melville* "having been the same act", merged. It is clear, however, that the actions comprising the two offenses under discussion in *Melville* were directed primarily at the person of Mrs. Murphy, which distinguishes that situation from ours.

## II. VOLUNTARINESS OF THE CONFESSION

The appellant attacks the voluntariness of the confession which he had given the police authorities on three grounds: (1) that it was procured through inducement; [4] (2) that he was denied the right to secure counsel; and (3) that he did not make an intelligent waiver of his rights under the *Miranda* doctrine.

The appellant based his first challenge to the confession on his own testimony that "he [one of the police officers] said if you give a statement it won't do you no harm in the courtroom, something like that." The appellant would elevate this indefinite statement to the category of an inducement and further expand its importance by contending that the State failed to produce any rebuttal to it.

In retrospect it may now appear that it would have been preferable had the State undertaken a specific rebuttal on this point. However, we do not view the failure to do so as reversible error for the simple reason that on both direct and cross-examination Captain Cadden and Sergeant Clarke, the interrogating officers and Police-woman Norris, who transcribed the statement, all de-

---

4. This would have been in violation of the principles set forth in Keller v. State, 2 Md. App. 623, 626-627, 236 A. 2d 313 (1967). See also Miranda v. Arizona, 384 U. S. 436 (1966).

nied that any promises or inducements had been made to obtain the confession. It should also be noted that the appellant's testimony in this area was not clear-cut, and as the Court of Special Appeals observed in its unreported per curiam opinion, "he qualified his testimony by saying the police told him 'something like that.' * * * We think the appellant's testimony * * * in view of its qualifications * * * too general, too lacking in specificity and too uncertainly stated to provide the foundation for an allegation of an illegal inducement requiring the State specifically to controvert it as part of its proof of voluntariness." Cf. *Streams v. State,* 238 Md. 278, 281, 208 A. 2d 614 (1965).

We think the general denials of inducement by the police officers involved in the interrogation, together with Captain Cadden's testimony that he had read and explained the *Miranda* warnings to the accused prior to interrogation, one of which warnings specifically provided that anything appellant said "may be used against him in a court of law," was sufficient to meet the inducement challenge.

> "Many jurisdictions have enunciated the principle that the concept of a 'fair trial' must not be confused with that of a perfect trial. An accused has a constitutional right to a 'fair trial' but not necessarily to that seldom experienced rarity, a perfect trial. See *State v. Smith,* 193 S. E. 573, 574 (W. Va. 1937)." *State v. Babb,* 258 Md. 547, 552, 267 A. 2d 190 (1970).

The appellant's second attack on the voluntariness of his confession is based on his statement that he was denied the right to counsel prior to making it. This is predicated on his testimony that he requested of Sergeant Clarke the opportunity to make a telephone call while he was on his way to the police station and again asked permission of Captain Cadden, while Sergeant Clarke was out of the room, to make a telephone call "to his people" so that they could obtain a lawyer for him. Both Sergeant Clarke and Captain Cadden testified on rebuttal

and refuted the appellant's statements as to the request to make telephone calls. In addition Captain Cadden testified that in his explanation of the *Miranda* rights to the accused, he informed him of his right to counsel and the State's obligation to obtain counsel for him in the event of his indigency. The trial court was free to believe or not believe the accused's version of the telephone call requests and it is obvious that it chose not to. *Tillery v. State,* 3 Md. App. 142, 148, 238 A. 2d 125 (1968).

In the Court's mind the case at bar is distinguishable on the facts from *Miller v. Warden, Maryland Penitentiary,* 338 F. 2d 201 (4th Cir., 1964), and *Thiess v. State,* 235 Md. 541, 201 A. 2d 790 (1964), relied upon by the appellant. In the instant case we believe the rebuttal testimony of the police officers to be aided by the factual consideration that the accused was arrested at 10:30 A.M. on April 29, 1968, and the statement was begun at 11:31 A.M. and concluded at 12:07 P.M. the same day, a matter of one hour and 37 minutes. By comparison in the *Miller* case the time interval between arrest and the rendition of the confession was 28 hours, which would lend some credence to the proposition that during such a long period of time the accused might logically have sought advice of counsel. In the *Thiess* case, the accused claimed his request to make a telephone call was made to the turnkey, and the State made no attempt to call the turnkey as a witness to deny this contention by direct or rebuttal testimony.

There are additional reasons why the lower court may well have chosen not to believe the accused's testimony regarding the telephone calls, which we believe become more apparent with the consideration of his denial as to having been given any *Miranda* warnings.

This brings us to the appellant's final attack upon the admissibility of his confession which is bottomed on his contention that he was never given the *Miranda* warnings, nor did he ever waive them. The appellant testified that he was 21 years of age, had a fifth grade education, and could not read and write. He denied that the *Miranda*

rights were ever explained to him; he denied signing either the waiver of *Miranda* rights' form or the confession itself; he denied giving the police a statement. When pressed by further examination he did admit to signing the typed statement and initialing its pages but he denied that it was read to him. Upon further examination by the trial judge he admitted to signing the waiver of *Miranda* rights.

On cross-examination, the appellant qualified his direct testimony by stating that the interrogating officer had said that he would read the explanation of the *Miranda* rights but failed to do so. The accused also admitted writing a letter to a judge in his own handwriting shortly after his arrest, but in an effort to conform to his original testimony that he could not read or write, he explained that he copied it from a letter written for him by a friend.

Both Captain Cadden and Sergeant Clarke were quite positive in their testimony that the *Miranda* rights were read and explained to the accused and that appellant signed an explanation of rights form and thereafter gave the statement. The appellant has argued that the courts have generally held that a waiver may not be implied by a silent record, nor may a valid waiver be presumed from the fact that a confession was eventually obtained. *Anderson v. State,* 6 Md. App. 688, 253 A. 2d 387 (1969). However, the facts of this case certainly present anything but the silent record envisioned in *Anderson, supra. Anderson* also stands for the proposition that if an accused has been informed of his rights, and indicates understanding of those rights, his decision to give a statement without requesting an attorney is sufficient evidence that the accused knows his rights but chooses not to exercise them.

We are of the opinion, as was the Court of Special Appeals, that the trial court was correct in finding the confession to have been voluntarily given and properly admissible within the guidelines of *Miranda.*

*Judgments affirmed.*