643 A.2d 520

**Barbara Ann PETERSON**

v.

**STATE of Maryland.**

**No. 1696, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

July 1, 1994.

Certiorari Denied Nov. 10, 1994.

**154**

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Christian J. Jensen, State's Atty. for Caroline County, Denton, on the brief), for appellee.

Submitted before GARRITY and MURPHY, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

MURPHY, Judge.

In the Circuit Court for Caroline County, a jury (the Honorable J. Owen Wise, presiding) convicted Barbara Peterson, appellant, of first degree murder and use of a handgun in a crime of violence. Appellant's husband, Loren Peterson, died of multiple gunshot wounds inflicted by appellant, who killed him as he sat in a reclining chair while watching television.

Appellant made a voluntary statement to T.F.C. John Bollinger of the Maryland State Police. According to Trooper Bollinger:

> She advised that at approximately 8:30 her husband went to church and stayed at services until approximately 10:45. It was at the Immaculate Conception in Marydel, the church he attended. Said he returned home approximately 11:30 or Noon. The victim changed clothes and went outside to feed his animals. Came back in the residence for a short period of time. Then went back outside to do more yard work. The victim had started a fire in the backyard near the animals. Mrs. Peterson asked him through the window to put the fire out. It was disturbing the animals. The victim stated it was not bothering the animals and kept it burning. Approximately 1:00 P.M., the victim came into the residence and turned on the television in the living room and began watching football. Sat in the recliner located in the left rear corner of the living room. Mrs. Peterson stated she had a revolver on her. She had the extra rounds in her pocket. She went into the bathroom just off of the living room. Took the gun into her hand. Mrs. Peterson stated she don't know what happened to her in the bathroom, but she came out with the gun in her hand, pointed the gun at her husband and repeated you're not going to kill me....

> Mrs. Peterson advised that she fired on (sic) at her husband. He attempted to get out of the chair and stated, "No, honey." Mrs. Peterson stated she got very scared and fired several more shots at her husband and he fell back into the chair. She further stated that her husband had a pained look on his face and she thought he was suffering from the wounds. Mrs. Peterson unloaded the weapon from where she had fired the shots and reloaded the weapon.

Appellant did not contest the issue of criminal agency. Although the jurors heard evidence that she had on occasion been physically abused by the victim, appellant's defense made no reference to the "battered spouse syndrome." Appellant did not testify. She did, however, assert the defense of not

criminally responsible by reason of insanity.[1]  In the words of her trial counsel, appellant

> was suffering from a mental disorder, . . . was not in control of her actions.  Her delusions had convinced her that she had to take action against her husband.  She could not control herself and unfortunately she took these actions.

Appellant presents but one question for our review:

> "Did the trial court err. in refusing to propound an instruction regarding voluntary manslaughter?"

The State concedes that the defense presented evidence from which the jury could conclude that, at the time she shot her husband, appellant harbored a subjectively honest but objectively unreasonable belief that she was in peril of death or serious bodily harm.  The jurors heard the following testimony[2] from Dr. Carole Kleinman, a psychiatrist called as an expert for the defense:

> Q.  Dr. Kleinman, with the mental condition of Barbara Peterson, may I give you a hypothetical.  A person with the mental condition of Barbara Peterson on the date in question exactly one year ago.  Could that person have a delusion of illogical but honest belief that they would have to use force to protect themselves from imminent or bodily harm?
>
> A.  Definitely.  I mean that is the whole point.  She was convinced that her life was in imminent danger.  There was no question in her mind.
>
> Q.  This means even if a person was not even attacking her or anything that they could . . . a person in that state could believe that?

---

1.  The jury found that although appellant was suffering from a mental disorder, she nonetheless could conform her conduct to the requirements of law.

2.  Our reference to this evidence is not intended to suggest that it would have been admissible over a timely objection.  See *Simmons v. State,* 313 Md. 33, 47–48, 542 A.2d 1258 (1988), *Hartless v. State,* 327 Md. 558, 573, 611 A.2d 581 (1992) and *State v. Martin,* 329 Md. 351, 366, 619 A.2d 992 (1993).

A. Yes. She was convinced that her life was in danger.

Q. Imminent danger?

A. Imminent danger. That she was going to be killed. There was no question in her mind.

■ Appellant concedes that she was not entitled to a jury instruction on "perfect" self-defense because the jury heard no evidence from which it could conclude that the victim's words or conduct created an objectively reasonable fear of death or serious bodily harm. She contends, however, that the issue of imperfect self-defense was generated in this case because that defense "requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety ..." *State v. Faulkner,* 301 Md. 482, 500, 483 A.2d 759 (1984) *aff'g. Faulkner v. State,* 54 Md.App. 113, 458 A.2d 81 (1983). We disagree.

In *Cunningham v. State,* 58 Md.App. 249, 473 A.2d 40 (1984), the appellant "took the stand in his own defense and testified unequivocally that he shot the victim ... because he feared that if he did not kill in self-defense, he would be killed or grievously wounded himself." *Id.* at 259, 473 A.2d 40. He also testified, however, that he had initiated the fatal encounter by drawing a loaded gun as he approached the victim. We therefore held that appellant's "strained and implausible assertion" was insufficient "to generate a genuine jury issue as to self-defense, perfect or imperfect." *Id.* at 257, 473 A.2d 40. The Court of Appeals denied cert. 300 Md. 316, 477 A.2d 1195 (1984).

Appellant contends that *Cunningham* has been displaced by *Faulkner,* in which the Court of Appeals did state that an imperfect self-defense instruction should be given "when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily harm ..." 301 Md. at 500, 483 A.2d 759. In that case, however, the victim testified that what began as an argument had "escalated into a fight," and that after he had "swung and kicked Faulkner, Faulkner produced a handgun ... and pulled the trigger." 301 Md. at 505, 483 A.2d 759.

*Faulkner* does indeed hold that if the issue of "perfect" self-defense has been generated the issue of "imperfect" self-defense has been generated as well. The *Faulkner* Court explained why an imperfect self-defense instruction is necessary:

> A proper instruction when such evidence is present would enable the jury to reach one of several verdicts: (1) if the jury concluded the defendant did not have a subjective belief that the use of deadly force was necessary, its verdict would be murder; (2) if the jury concluded that the defendant had a reasonable subjective belief, its verdict would be not guilty; and (3) if the jury concluded that the defendant honestly believed that the use of force was necessary but that this subjective belief was unreasonable under the circumstances, then its verdict would be guilty of voluntary manslaughter.

301 Md. at 500–501, 483 A.2d 759.

■ From that explanation and our review of the cases, we conclude that the imperfect self-defense instruction should not be given unless the evidence generates the issue of whether, under the circumstances, the defendant was entitled to take *some* action against the victim.

As was the situation in *Faulkner,* every case holding that the issue of imperfect self-defense had been generated involved a situation in which the evidence was sufficient to support a reasonable conclusion that the defendant was entitled to take *some* action against the victim. In *Shuck v. State,* 29 Md.App. 33, 349 A.2d 378 (1975), the jurors could have concluded that, even though a murder defendant should not have resorted to the use of deadly force, he was nonetheless entitled to use non-deadly force against the person who had wrestled his companion to the ground. 29 Md.App. at 37–40, 349 A.2d 378. In *Law v. State,* 29 Md.App. 457, 349 A.2d 295 (1975), the trial judge could have concluded that, even though the murder defendant should not have resorted to the use of deadly force, he was nonetheless entitled to use non-deadly force against the persons who were about to enter his home.

29 Md.App. at 462–463. In *Watkins v. State,* 79 Md.App. 136, 555 A.2d 1087 (1989), the jurors could have concluded that, even though the defendant was the initial aggressor, because he had not employed deadly force, he was nonetheless entitled to protect himself from the victim when the victim "escalated" the fight to a higher level of violence. 79 Md.App. at 139, 555 A.2d 1087. In *Dykes v. State,* 319 Md. 206, 571 A.2d 1251 (1990), the jurors could have concluded that, even though the defendant should not have resorted to the use of deadly force, he was nonetheless entitled to use non-deadly force while protecting himself against a sexual assault. 319 Md. at 223, 571 A.2d 1251.

On the other hand, in every case holding that the issue of imperfect self-defense had not been generated, the evidence was insufficient to support a reasonable conclusion that the defendant was entitled to take *any* action against the victim. *Cunningham, supra,* 58 Md.App. at 257, 473 A.2d 40, *Lambert v. State,* 70 Md.App. 83, 99, 519 A.2d 1340 (1987), *State v. Martin,* 329 Md. 351, 366–368, 619 A.2d 992 (1993).

In this case, the jurors heard no evidence that, when appellant shot the victim, the victim was saying or doing anything which could have led a reasonable person to believe that the victim posed an imminent danger of any injury— serious or otherwise. Indeed, the defense conceded at trial that no sane person in appellant's position on the occasion of the fatal encounter would conclude that appellant was in any danger. The jury heard Dr. Kleinman's testimony only because appellant entered a plea of not criminally responsible by reason of insanity. This testimony would generate the issue of imperfect self-defense only if the defense of "diminished capacity" were recognized in Maryland. Maryland, however, does not recognize that defense. *Johnson v. State,* 292 Md. 405, 418, 439 A.2d 542 (1982). Appellant was not entitled to an instruction on imperfect self-defense.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**