## WILLIAM WHITEHEAD *v.* STATE OF MARYLAND

[No. 265, September Term, 1969.]

*Decided February 18, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*James F. Garrity* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Gerald A. Kroop* and *Harriette Cohen, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

William Whitehead does not deny that he killed Robert Carter Barrett. But he urges that he is not culpable because he killed in self-defense. With this we do not agree. He argues in the alternative that, if he is culpable, the crime is not murder in the second degree as found at a court trial in the Criminal Court of Baltimore. With this we agree. The judgment is reversed and the case remanded for a new trial.

A homicide, the killing of a human being by another human being, is felonious and the accountable perpetrator [1] is culpable, if it is murder or manslaughter. A homicide is not felonious, and the perpetrator, even though otherwise accountable, is not culpable, if the homicide is justifiable or excusable.[2] In this jurisdiction murder may be in the first degree or second degree as designated by statute. All murder perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and pre-

---

1. A person is not responsible for his criminal conduct if he is insane within the meaning of Md. Code, Art. 59, § 9. A child under the age of 7 years has no criminal capacity; he is conclusively presumed to be *doli incapax,* incapable of entertaining a criminal intent. One who has reached the age of 14 years has the same criminal capacity as an adult; he is *doli capax,* fully accountable for his criminal conduct. There is a rebuttable presumption that a child between the ages of 7 and 14 years is incapable of entertaining a criminal intent, the burden being on the State to prove capacity. If so proved, the maxim *malitia supplet aetatem* applies. See *Clark & Marshall, Law of Crimes,* 6th Ed., § 6.12, pp. 391-394; *Perkins, Criminal Law,* (1957), p. 729.

2. We note that at the common law "to make the killing murder, it is requisite that the party die within a year and a day after the stroke or cause of death administered; the day of injury being computed therein." 4 *Blackstone's Commentaries on the Law* (Gavit), p. 833.

meditated killing, Md. Code, Art. 27, § 407; or committed in the perpetration of, or attempt to perpetrate any rape, sodomy, mayhem, robbery, burglary, or in the escape from any jail or penal institution, § 410; or in the perpetration of or attempt to perpetrate any arson, §. 408; or in the burning or attempting to burn specifically designated structures, § 409; shall be murder in the first degree. All other kinds of murder shall be deemed murder in the second degree, § 411. Manslaughter is homicide without malice aforethought; it is the absence of malice aforethought which reduces murder to manslaughter. *Chisley v. State,* 202 Md. 87, 105.[3]

Homicide in self-defense is either justifiable or excusable. Justifiable self-defense is where a person is feloniously assaulted, being without fault himself, and necessarily kills his assailant to save himself from death or great bodily harm, or from other felony attempted by force or surprise. Excusable self-defense is where a person becomes engaged in a sudden affray or combat, and in the course of the affray or combat, necessarily, or under reasonably apparent necessity, kills his adversary to save himself from death or great bodily harm after retreating as far as he can with safety. The force used must not be unreasonable or excessive. See *Ware v. State,* 3 Md. App. 62, 65; *Tipton v. State,* 1 Md. App. 556, 560. The distinction between justifiable and excusable self-defense is real but has not practical effect in application. If the homicide is committed in either justifiable or excusable self-defense within the frame of reference of their meanings, the killer is not culpable. But there may be a homicide which would otherwise be murder which is reduced to manslaughter by circumstances of alleviation or mitigation. Such a case is where the circumstances surrounding the homicide establish that it was provoked. For the "Rule of Provocation" to be invoked there are four requirements:

---

3. For a discussion of malice see *Lindsay v. State,* 8 Md. App. 100.

(1) There must have been adequate provocation;

(2) The killing must have been in the heat of passion;

(3) It must have been a sudden heat of passion —that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool;

(4) There must have been a causal connection between the provocation, the passion, and the fatal act.

See *Perkins, Criminal Law* (1957), pp. 43-55.[4] There is adequate provocation when there is a mutual quarrel or combat. "The combat is mutual if the intent to fight is mutual, and in such situations the question of which one actually strikes the first blow is not controlling. In fact, if both intend to fight and are ready to do so it may be a 'mutual combat' although one party did not actually strike any blow." *Id.*, at p. 49.[5] Blackstone expressed it, "If upon sudden quarrel, two persons fight, and one slay the other, this is manslaughter; so also, if upon such occasion, they go out and fight in a field." 4 *Blackstone's Commentaries on the Law* (Gavit), p. 831. "But no provocation, however, grievous, will reduce a voluntary homicide to manslaughter, if the circumstances show that the slayer acted, not in the heat of blood, but from malice." *Clark & Marshall, supra,* § 10.11, p. 621.

---

4. Blackstone in his *Commentaries on the Law* (Gavit), Book 4, p. 831 says, "Manslaughter in sudden provocation differs from excusable homicide, *se defendendo*, in this, that in the latter for self preservation, there is an apparent necessity to kill the aggressor; while in manslaughter, it is only a sudden act of revenge."

5. We note that the rule of provocation is not applicable if the homicide results from force which was neither intended nor likely to cause death or great bodily injury. And attack and defense are not mutual; if one person attacks another who defends himself with no more force than he is privileged by law to use for his own protection, there is no question of provocation within the rule; the assailant is acting without mitigation and the defender is excused . . .

12

Before rendering its verdict in the instant case the court made findings of fact on the evidence before it. It found that on the evening of 23 September 1968 appellant, in concert with his girl friend, stole a billfold belonging to the deceased's wife; that some time later that evening appellant and one Darryl Anderson went to Hank's Bar; that the deceased was in the Bar but that this was unknown to appellant prior to his entering the premises; that appellant was approached by the deceased who demanded the return of his wife's billfold; that the deceased threatened or pushed appellant, whereupon appellant said, "If we are going to fight, let's go outside"; that "subsequent thereto" appellant, Anderson and the deceased went outside together; that the deceased did not have a knife in his possession and was not armed; that while they were outside it could not determine whether or not the deceased struck any blows; that appellant did strike the deceased one or more blows which resulted in his death; that it could not find beyond a reasonable doubt that appellant robbed the deceased or that the motive in inviting him outside was to rob him. It said, at that point:

"From all of the facts and circumstances of the case, the Court finds that the State has not proven all the essential elements to make this a first degree murder, and the Court finds from all the evidence that this was not a felony murder. Nor has it been proven that the act of the defendant was a wilful, deliberate and premeditated act. Nor can I draw any such inference as to all of these elements."

It then referred to the presumption that all homicides are committed with malice aforethought, defined malice as the intentional doing of a wrongful act without legal excuse or justification, noted that the burden was on the accused to show circumstances of alleviation, excuse or justification which would reduce the offense to manslaughter and determined that appellant not only "failed

to meet this burden, but in addition, * * * irrespective of that burden, the evidence clearly establishes that the act of the defendant was intentional and without legal excuse or justification."

From our review of the evidence, giving due regard to the opportunity of the lower court to judge the credibility of the witnesses, as their credibility as well as the weight of the evidence were matters for it, *Sadler v. State*, 1 Md. App. 383, we have determined that there was evidence, direct or by rational inference therefrom, to support its *factual* findings. Thus we cannot say that its factual findings were clearly erroneous. Md. Rule 1086.

We think it clear that the facts as found by the lower court did not show that appellant committed the homicide in self-defense so as to make the killing either justified or excused. We believe it equally clear that express malice was not proved, nor did the lower court find that it was. Nor can we find that, in law, the evidence was sufficient to raise an inference of implied malice. We do not feel that the evidence showed beyond a reasonable doubt that appellant sought the occasion or provoked the difficulty for the purpose of killing the deceased, nor was there a deadly weapon used by him. It did not appear that the deceased was beaten to death. Although the evidence was sufficient to prove that appellant's acts were the proximate cause of the death, as from an intentional blow which the lower court found was struck by appellant, knocking deceased to the ground, it did not show that the killing was the direct result of a blow or blows struck by appellant. The autopsy findings were that the deceased died "of cranio-cerebral injuries consistent with a fall" and the manner of death was stated as "undetermined."

The question is whether the evidence showed circumstances of alleviation or mitigation sufficient to rebut the presumption that all homicides are committed with malice aforethought and to constitute murder. *Chisley v. State, supra,* at 105. See *Lindsay v. State, supra.* The lower court found that there was an altercation or quar-

14

rel between appellant and deceased, provoked by deceased, during which the deceased threatened or pushed appellant. Appellant, said, "If we are going to fight, let's go outside," and they went, in the parlance of Blackstone, "in the field" to fight. We think the circumstances as found by the lower court lead only to the conclusion that they went outside to engage in a mutual combat, that they did so engage, that both entered into it willingly regardless of their reasons,[6] that the encounter reached the proportion of actual physical contact, and that as a result of a blow struck by appellant, the deceased died. The court did not find that an unfair advantage was taken by appellant at the outset of the combat or that at the commencement of the contest they did not start on equal terms. The court could not determine from the evidence whether or not the deceased struck any blows during the combat, but as we have stated, there being a mutual combat, it was not material which one struck the first blow or that the deceased struck no blow at all. Thus the mutual combat was adequate provocation. We are unable to say that the evidence, in law, was sufficient for the lower court to find, beyond a reasonable doubt, in the circumstances, that the blow was not struck in the heat of passion engendered by the mutual combat. Therefore, there were mitigating circumstances shown by the evidence which were sufficient to invoke the rule of provocation. Under that rule the homicide here was not murder and the judgment of the lower court on the evidence was clearly erroneous. Md. Rule 1086.

While it is not the purpose of law to unbridle the passions of men, and although, on the contrary, one of its important aims is to keep their passions under proper control, yet, at the same time, the law does not ignore completely the weaknesses of human nature which surface in compelling circumstances. See *Perkins, supra,* at p. 42. The law does not operate to excuse or justify the

---

6. If the deceased thought that appellant had stolen his wife's billfold, his proper recourse was to the law and not, in these times, to ordeal by combat.

intentional act of appellant, but it does not prescribe that it was murder.

As we conclude from the record before us that the evidence adduced at the instant trial was sufficient to sustain a conviction of manslaughter, we remand the case for a new trial, the interests of justice clearly appearing to require it. See *Gray v. State,* 254 Md. 385. And we note that the State may be able to adduce additional probative evidence at another trial sufficient to establish that the homicide was murder in the second-degree.

> *Judgment reversed; case re-*
> *manded for a new trial.*