583 A.2d 718

**Steven Saunders GIROUARD**

**v.**

**STATE of Maryland.**

**No. 65, Sept. Term, 1989.**

Court of Appeals of Maryland.

Jan. 8, 1991.

Nancy S. Forster, Asst. Public Defender and George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, J. Theodore Wiesman, Dist. Public Defender, all on brief), Baltimore, for petitioner.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE and RODOWSKY, JJ., and COLE,** ADKINS,* BLACKWELL * and MARVIN H. SMITH (retired), Court of Appeals Judges, Specially Assigned.

COLE, Judge.

In this case we are asked to reconsider whether the types of provocation sufficient to mitigate the crime of murder to manslaughter should be limited to the categories we have heretofore recognized, or whether the sufficiency of the provocation should be decided by the factfinder on a case-by-case basis. Specifically, we must determine whether words alone are provocation adequate to justify a conviction of manslaughter rather than one of second degree murder.

The Petitioner, Steven S. Girouard, and the deceased, Joyce M. Girouard, had been married for about two months on October 28, 1987, the night of Joyce's death. Both parties, who met while working in the same building, were in the army. They married after having known each other for approximately three months. The evidence at trial indicated that the marriage was often tense and strained, and there was some evidence that after marrying Steven, Joyce had resumed a relationship with her old boyfriend, Wayne.

---

** Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

* Adkins, J., and Blackwell, J., now retired, participated in the hearing and conference of this case while active members of this Court but did not participate in the decision and adoption of this opinion.

On the night of Joyce's death, Steven overheard her talking on the telephone to her friend, whereupon she told the friend that she had asked her first sergeant for a hardship discharge because her husband did not love her anymore. Steven went into the living room where Joyce was on the phone and asked her what she meant by her comments; she responded, "nothing." Angered by her lack of response, Steven kicked away the plate of food Joyce had in front of her. He then went to lie down in the bedroom.

Joyce followed him into the bedroom, stepped up onto the bed and onto Steven's back, pulled his hair and said, "What are you going to do, hit me?" She continued to taunt him by saying, "I never did want to marry you and you are a lousy fuck and you remind me of my dad."[1] The barrage of insults continued with her telling Steven that she wanted a divorce, that the marriage had been a mistake and that she had never wanted to marry him. She also told him she had seen his commanding officer and filed charges against him for abuse. She then asked Steven, "What are you going to do?" Receiving no response, she continued her verbal attack. She added that she had filed charges against him in the Judge Advocate General's Office (JAG) and that he would probably be court martialed.[2]

When she was through, Steven asked her if she had really done all those things, and she responded in the affirmative. He left the bedroom with his pillow in his arms and proceeded to the kitchen where he procured a long handled kitchen knife. He returned to Joyce in the bedroom with the knife behind the pillow. He testified that he was enraged and that he kept waiting for Joyce to say she was kidding, but Joyce continued talking. She said she

---

1. There was some testimony presented at trial to the effect that Joyce had never gotten along with her father, at least in part because he had impregnated her when she was fourteen, the result of which was an abortion. Joyce's aunt, however, denied that Joyce's father was the father of Joyce's child.

2. Joyce lied about filing the charges against her husband.

had learned a lot from the marriage and that it had been a mistake. She also told him she would remain in their apartment after he moved out. When he questioned how she would afford it, she told him she would claim her brain-damaged sister as a dependent and have the sister move in. Joyce reiterated that the marriage was a big mistake, that she did not love him and that the divorce would be better for her.

After pausing for a moment, Joyce asked what Steven was going to do. What he did was lunge at her with the kitchen knife he had hidden behind the pillow and stab her 19 times. Realizing what he had done, he dropped the knife and went to the bathroom to shower off Joyce's blood. Feeling like he wanted to die, Steven went back to the kitchen and found two steak knives with which he slit his own wrists. He lay down on the bed waiting to die, but when he realized that he would not die from his self-inflicted wounds, he got up and called the police, telling the dispatcher that he had just murdered his wife.

When the police arrived they found Steven wandering around outside his apartment building. Steven was despondent and tearful and seemed detached, according to police officers who had been at the scene. He was unconcerned about his own wounds, talking only about how much he loved his wife and how he could not believe what he had done. Joyce Girouard was pronounced dead at the scene.

At trial, defense witness, psychologist, Dr. William Stejskal, testified that Steven was out of touch with his own capacity to experience anger or express hostility. He stated that the events of October 28, 1987, were entirely consistent with Steven's personality, that Steven had "basically reach[ed] the limit of his ability to swallow his anger, to rationalize his wife's behavior, to tolerate, or actually to remain in a passive mode with that. He essentially went over the limit of his ability to bottle up those strong emotions. What ensued was a very extreme explosion of rage that was intermingled with a great deal of panic." Another defense witness, psychiatrist, Thomas Goldman,

testified that Joyce had a "compulsive need to provoke jealousy so that she's always asking for love and at the same time destroying and undermining any chance that she really might have to establish any kind of mature love with anybody."

Steven Girouard was convicted, at a court trial in the Circuit Court for Montgomery County, of second degree murder and was sentenced to 22 years incarceration, 10 of which were suspended. Upon his release, Petitioner is to be on probation for five years, two years supervised and three years unsupervised. The Court of Special Appeals affirmed the judgment of the circuit court in an unreported opinion. We granted certiorari to determine whether the circumstances of the case presented provocation adequate to mitigate the second degree murder charge to manslaughter.

Petitioner relies primarily on out of state cases to provide support for his argument that the provocation to mitigate murder to manslaughter should not be limited only to the traditional circumstances of: extreme assault or battery upon the defendant; mutual combat; defendant's illegal arrest; injury or serious abuse of a close relative of the defendant's; or the sudden discovery of a spouse's adultery. Petitioner argues that manslaughter is a catchall for homicides which are criminal but that lack the malice essential for a conviction of murder. Steven argues that the trial judge did find provocation (although he held it inadequate to mitigate murder) and that the categories of provocation adequate to mitigate should be broadened to include factual situations such as this one.

The State counters by stating that although there is no finite list of legally adequate provocations, the common law has developed to a point at which it may be said there are some concededly provocative acts that society is not prepared to recognize as reasonable. Words spoken by the victim, no matter how abusive or taunting, fall into a category society should not accept as adequate provocation. According to the State, if abusive words alone could mitigate murder to manslaughter, nearly every domestic argu-

ment ending in the death of one party could be mitigated to manslaughter. This, the State avers, is not an acceptable outcome. Thus, the State argues that the courts below were correct in holding that the taunting words by Joyce Girouard were not provocation adequate to reduce Steven's second degree murder charge to voluntary manslaughter.

Initially, we note that the difference between murder and manslaughter is the presence or absence of malice. *State v. Faulkner*, 301 Md. 482, 485, 483 A.2d 759 (1984); *State v. Ward*, 284 Md. 189, 195, 396 A.2d 1041 (1978); *Davis v. State*, 39 Md. 355 (1874). Voluntary manslaughter has been defined as "an *intentional* homicide, done in a sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool" (Emphasis in original). *Cox v. State*, 311 Md. 326, 331, 534 A.2d 1333 (1988). *See also, State v. Faulkner, supra; State v. Ward, supra; Whitehead v. State*, 9 Md.App. 7, 262 A.2d 316 (1970).

There are certain facts that may mitigate what would normally be murder to manslaughter. For example, we have recognized as falling into that group: (1) discovering one's spouse in the act of sexual intercourse with another; (2) mutual combat; (3) assault and battery. *See State v. Faulkner*, 301 Md. at 486, 483 A.2d 759. There is also authority recognizing injury to one of the defendant's relatives or to a third party, and death resulting from resistance of an illegal arrest as adequate provocation for mitigation to manslaughter. *See, e.g.*, 40 C.J.S. *Homicide* § 48 at 913 (1944) and 40 C.J.S. *Homicide* § 50 at 915–16 (1944). Those acts mitigate homicide to manslaughter because they create passion in the defendant and are not considered the product of free will. *State v. Faulkner*, 301 Md. at 486, 483 A.2d 759.

■ In order to determine whether murder should be mitigated to manslaughter we look to the circumstances surrounding the homicide and try to discover if it was provoked by the victim. Over the facts of the case we lay

the template of the so-called "Rule of Provocation." The courts of this State have repeatedly set forth the requirements of the Rule of Provocation:

1. There must have been adequate provocation;
2. The killing must have been in the heat of passion;
3. It must have been a sudden heat of passion—that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool;
4. There must have been a causal connection between the provocation, the passion, and the fatal act.

*Sims v. State,* 319 Md. 540, 551, 573 A.2d 1317 (1990); *Glenn v. State,* 68 Md.App. 379, 406, 511 A.2d 1110, *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986); *Carter v. State,* 66 Md.App. 567, 571, 505 A.2d 545 (1986); *Tripp v. State,* 36 Md.App. 459, 466, 374 A.2d 384 (1977); *Whitehead v. State,* 9 Md.App. at 11, 262 A.2d 316.

■ We shall assume without deciding that the second, third, and fourth of the criteria listed above were met in this case. We focus our attention on an examination of the ultimate issue in this case, that is, whether the provocation of Steven by Joyce was enough in the eyes of the law so that the murder charge against Steven should have been mitigated to voluntary manslaughter. For provocation to be "adequate," it must be " 'calculated to inflame the passion of a reasonable man and tend to cause him to act for the moment from passion rather than reason.' " *Carter v. State,* 66 Md.App. at 572, 505 A.2d 545 quoting R. Perkins, *Perkins on Criminal Law* at p. 56 (2d ed. 1969). The issue we must resolve, then, is whether the taunting words uttered by Joyce were enough to inflame the passion of a *reasonable* man so that that man would be sufficiently infuriated so as to strike out in hot-blooded blind passion to kill her. Although we agree with the trial judge that there was needless provocation by Joyce, we also agree with him that the provocation was not adequate to mitigate second degree murder to voluntary manslaughter.

■ Although there are few Maryland cases discussing the issue at bar, those that do hold that words alone are not adequate provocation. Most recently, in *Sims v. State*, 319 Md. 540, 573 A.2d 1317, we held that "[i]nsulting words or gestures, no matter how opprobrious, do not amount to an affray, and standing alone, do not constitute adequate provocation." *Id.* at 552, 573 A.2d 1317. That case involved the flinging of racial slurs and derogatory comments by the victim at the defendant. That conduct did not constitute adequate provocation.

In *Lang v. State*, 6 Md.App. 128, 250 A.2d 276, *cert. denied*, 396 U.S. 971, 90 S.Ct. 457, 24 L.Ed.2d 438 (1969), the Court of Special Appeals stated that it is "generally held that mere words, threats, menaces or gestures, however offensive and insulting, do not constitute adequate provocation." *Id.* at 132, 250 A.2d 276. Before the shooting, the victim had called the appellant "a chump" and "a chicken," dared the appellant to fight, shouted obscenities at him and shook his fist at him. *Id.* The provocation, again, was not enough to mitigate murder.

The court in *Lang* did note, however, that words can constitute adequate provocation if they are accompanied by conduct indicating a present intention and ability to cause the defendant bodily harm. *Id.* Clearly, no such conduct was exhibited by Joyce in this case. While Joyce did step on Steven's back and pull his hair, he could not reasonably have feared bodily harm at her hands. This, to us, is certain based on Steven's testimony at trial that Joyce was about 5'1" tall and weighed 115 pounds, while he was 6'2" tall, weighing over 200 pounds. Joyce simply did not have the size or strength to cause Steven to fear for his bodily safety. Thus, since there was no ability on the part of Joyce to cause Steven harm, the words she hurled at him could not, under the analysis in *Lang*, constitute legally sufficient provocation.

Other jurisdictions overwhelmingly agree with our cases and hold that words alone are not adequate provocation. *See, e.g., State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977);

*West v. United States,* 499 A.2d 860 (D.C.App.1985); *Nicholson v. United States,* 368 A.2d 561 (D.C.App.1977); *Hill v. State,* 236 Ga. 703, 224 S.E.2d 907 (1976); *Cox v. State,* 512 N.E.2d 1099 (Ind.1987); *State v. Guebara,* 236 Kan. 791, 696 P.2d 381 (1985); *State v. Hilliker,* 327 A.2d 860 (Me.1974); *Commonwealth v. Bermudez,* 370 Mass. 438, 348 N.E.2d 802 (1976); *Gates v. State,* 484 So.2d 1002 (Miss.1986); *State v. Milosovich,* 42 Nev. 263, 175 P. 139 (1918); *State v. Mauricio,* 117 N.J. 402, 568 A.2d 879 (1990); *State v. Castro,* 92 N.M. 585, 592 P.2d 185 (1979); *State v. Best,* 79 N.C.App. 734, 340 S.E.2d 524 (1986); *State v. Butler,* 277 S.C. 452, 290 S.E.2d 1 (1982). One jurisdiction that does allow provocation brought about by prolonged stress, anger and hostility caused by marital problems to provide grounds for a verdict of voluntary manslaughter rather than murder is Pennsylvania. *See Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728, 733–34 (1987). The Pennsylvania court left the determination of the weight and credibility of the testimony regarding the marital stress and arguments to the trier of fact.

We are unpersuaded by that one case awash in a sea of opposite holdings, especially since a Maryland case counters *Nelson* by stating that "the long-smoldering grudge ... may be psychologically just as compelling a force as the sudden impulse but it, unlike the impulse, is a telltale characteristic of premeditation." *Tripp v. State,* 36 Md. App. at 471–72, 374 A.2d 384. Aside from the cases, recognized legal authority in the form of treatises supports our holding. *Perkins on Criminal Law,* at p. 62, states that it is "with remarkable uniformity that even words generally regarded as 'fighting words' in the community have no recognition as adequate provocation in the eyes of the law." It is noted that

mere words or gestures, however offensive, insulting, or abusive they may be, are not, according to the great weight of authority, adequate to reduce a homicide, although committed in a passion provoked by them, from murder to manslaughter, especially when the homicide

was intentionally committed with a deadly weapon[.] (Footnotes omitted)

40 C.J.S. *Homicide* § 47, at 909 (1944). *See also,* 40 Am. Jur.2d *Homicide* § 64, at 357 (1968).

■ Thus, with no reservation, we hold that the provocation in this case was not enough to cause a reasonable man to stab his provoker 19 times. Although a psychologist testified to Steven's mental problems and his need for acceptance and love, we agree with the Court of Special Appeals speaking through Judge Moylan that "there must be not simply provocation in psychological fact, but one of certain fairly well-defined classes of provocation recognized as being adequate as a matter of law." *Tripp v. State,* 36 Md.App. at 473, 374 A.2d 384. The standard is one of reasonableness; it does not and should not focus on the peculiar frailties of mind of the Petitioner. That standard of reasonableness has not been met here. We cannot in good conscience countenance holding that a verbal domestic argument ending in the death of one spouse can result in a conviction of manslaughter. We agree with the trial judge that social necessity dictates our holding. Domestic arguments easily escalate into furious fights. We perceive no reason for a holding in favor of those who find the easiest way to end a domestic dispute is by killing the offending spouse.

We will leave to another day the possibility of expansion of the categories of adequate provocation to mitigate murder to manslaughter. The facts of this case do not warrant the broadening of the categories recognized thus far.

JUDGMENT AFFIRMED WITH COSTS.

Judge ELDRIDGE concurs in the result only.