*Theodore Johnson v. State of Maryland*, No. 736, Sept. Term 2023. Opinion by Arthur, J.

**CRIMINAL LAW—LEGALLY ADEQUATE PROVOCATION**

The offense of murder may be reduced to manslaughter upon a finding that the defendant acted in the heat of passion, in response to adequate provocation, before there had been a reasonable opportunity for the passion to cool. In Maryland, adequate provocation includes mutual affray, assault and battery, resisting illegal arrest, and anything that has the natural tendency to produce passion in ordinary people. This case questioned the boundaries of this common-law defense.

In this case, Johnson fatally shot Christian after Christian punched Johnson's fiancée twice in the face. Johnson asked the court to provide a modified version of *Maryland Criminal Pattern Jury Instruction* ("MPJI-Cr") 4:17.4(c) that included a substantial battery upon a close relative of the defendant as a form of legally adequate provocation. The trial court was required to give this modified instruction, pursuant to Maryland Rule 4-325(c), if it was a correct statement of the law, was applicable to the facts of the case, and was not fairly covered by other instructions. The State argued that the jury could not find that Christian's conduct was adequate provocation because it was not an event listed in the court's provision of the jury instructions and it was not a correct statement of Maryland law. Although the court allowed Johnson to argue that Christian's conduct was legally adequate provocation, the court refused to modify the instruction and, instead, provided MPJI-Cr 4:17.4(c) unaltered.

The Appellate Court of Maryland held that a substantial battery on a close relative of the defendant may be legally adequate provocation under MPJI-Cr 4:17.4(c) to reduce the offense of murder to manslaughter. This type of provocative conduct is legally adequate to mitigate a murder offense because it is the longstanding common-law rule acknowledged in *Dorsey v. State*, 29 Md. App. 97 (1975), and *Girouard v. State*, 321 Md. 532, 538 (1991), followed uniformly in cases throughout the United States, and recognized in numerous treatises. The Appellate Court of Maryland, therefore, held that the trial court erred by not providing Johnson's requested, modified jury instruction because it was a correct statement of Maryland law, applicable to the facts of the case, and not fairly covered by any other instruction.

**CRIMINAL PROCEDURE—PROVISION OF MODIFIED JURY INSTRUCTIONS**

Except where Maryland Rule 4-325(c) requires a court to give a requested instruction, whether to give a particular jury instruction is generally a matter of discretion. A court's failure to exercise discretion when its exercise is required is an abuse of discretion. When the evidence in a case creates an issue that is not covered by an existing pattern

jury instruction, a trial court may need to draft instructions by incorporating relevant legal principles from case law. A court's failure to do so is, therefore, an abuse of discretion.

In this case, the trial court announced that it would not deviate from the pattern jury instruction language because it never modifies the pattern instructions. Pursuant to this personal policy, the trial court denied Johnson's request and refused to modify *Maryland Criminal Pattern Jury Instruction* 4:17.4(c) to include a substantial battery upon a close relative of the defendant as legally adequate provocation.

The Appellate Court of Maryland held that the trial court abused its discretion by employing an inflexible policy of never departing from the pattern jury instructions. The trial court's failure to take steps to adapt the jury instructions to this case was a failure to exercise its discretion and, therefore, an abuse of discretion.

Circuit Court for Baltimore City
Case No. 122186002

_____

THEODORE A. JOHNSON JR.

v.

STATE OF MARYLAND

_____

Arthur,
Reed,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: July 9, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The offense of murder can be reduced to voluntary manslaughter if the defendant acted in the heat of passion, in response to adequate provocation, before there had been a reasonable opportunity for the passion to cool. *See, e.g.*, *Girouard v. State*, 321 Md. 532, 538 (1991). In Maryland, "adequate provocation" generally includes mutual affray, assault and battery, resisting an illegal arrest, and "anything the natural tendency of which is to produce passion in ordinary [people]." *Christian v. State*, 405 Md. 306, 322-23 (2008).

Outside of Maryland, many authorities have recognized that adequate provocation includes an assault on a close relative or friend of the defendant. On several occasions, Maryland courts have, in dicta, recognized that adequate provocation may include "injury to one of the defendant's relatives or to a third party."[1] No Maryland court, however, has squarely held that adequate provocation includes injury to a relative or third party. Judge Charles E. Moylan, Jr., *Criminal Homicide Law* § 9:14 (MICPEL 2002).

---

[1] *See, e.g.*, *Girouard v. State*, 321 Md. at 538 (stating that "[t]here is also authority recognizing injury to one of the defendant's relatives or to a third party, and death resulting from resistance of an illegal arrest as adequate provocation for mitigation to manslaughter") (citing 40 C.J.S. *Homicide* § 48, at 913 (1944) and 40 C.J.S. *Homicide* § 50, at 915-16 (1944)); *see also Dorsey v. State*, 29 Md. App. 97, 103 (1975) (Moylan, J.) (stating that if the victim "unnecessarily battered the [defendant's wife] by throwing her down the stairs, the law would indicate that this would be at least a jury question with respect to legally adequate provocation"), *aff'd*, 278 Md. 221 (1976); *id*. (stating that "'a substantial battery upon . . . a close relative will justify the reduction of an intentional homicide to voluntary manslaughter'") (quoting Roy Moreland, *The Law of Homicide* 76 (1952)); *id.* at 105 (stating that, "[j]ust as a reasonable man may be provoked by some sorts of conduct which inflict injury upon himself, so too he may be provoked by the same sort of conduct which causes injury to his close relatives[]") (quoting Wayne LaFave and Austin W. Scott, *Criminal Law* 577 (1972)). We discuss additional examples in the body of this opinion.

The pattern jury instruction for voluntary manslaughter does not state that adequate provocation includes an assault on one of the defendant's relatives or a third party. Maryland State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions* 4:17.4(C) (3d. ed. 2024) ("MPJI-Cr"). Instead, the instruction states that the "only" acts that can give rise to adequate provocation are "a battery by the victim upon the defendant," "a fight between the victim and the defendant," or "an unlawful warrantless arrest of the defendant by the victim, which the defendant knew or reasonably believed was unlawful." *Id.* Nonetheless, the comment to the instruction recognizes the unsettled state of the law by citing dicta in the Maryland cases for the proposition that "[a] substantial battery upon the defendant, close relatives, or friends may constitute legally adequate provocation, even if insufficient to cause the fear of imminent death or serious bodily harm needed for a valid self-defense." *Id.*

This case squarely presents the question of whether adequate provocation includes a substantial battery on one of the defendant's close relatives. This case also presents the question of whether a circuit court erred or abused its discretion in adhering to a rigid policy of never departing from the pattern jury instructions.

In this case, Theodore Johnson stood trial in the Circuit Court for Baltimore City on charges of murder; using a handgun in the commission of a crime of violence; possessing a regulated firearm after having been convicted of a disqualifying crime; and wearing, carrying, or transporting a handgun on his person. Johnson claimed to have acted in a hot-blooded response to an assault on his fiancée (who is now his wife). He asked the court to modify the pattern jury instruction on voluntary manslaughter to

2

inform the jury that a substantial battery on a close relative of the defendant was legally adequate provocation. The trial judge refused to modify the instruction because of a personal policy never to alter the pattern jury instructions.

The jury convicted Johnson of second-degree murder and the firearms offenses. This timely appeal followed.

For the reasons set forth below, we hold that the court erred and abused its discretion in declining to give the requested instruction. Consequently, we vacate the second-degree murder conviction and the conviction for using a handgun in the commission of a crime of violence. But because the court's error does not affect the convictions for possessing a regulated firearm after having been convicted of a disqualifying crime and wearing, carrying, or transporting a handgun, we leave those convictions intact. We remand for a new trial on the charges of murder and using a handgun in the commission of a crime of violence.

FACTUAL AND PROCEDURAL BACKGROUND

**Evidence at Trial**

In the early evening of June 16, 2022, Theodore Johnson fatally shot William Christian during a family argument. The details of the incident are largely undisputed.

At the time of the incident, Johnson and Jasmine Stukes Johnson[2] had been together approximately 11 years, were engaged to be married, and lived together in

---

[2] At the time of the shooting, Johnson and Jasmine Stukes Johnson were engaged. They were married before trial. Out of respect, we refer to Jasmine Stukes Johnson as Ms. Johnson.

3

Baltimore City. Ms. Johnson's sister, Corrine Hurt, and her partner, Christian, had been together approximately 20 years and had raised three children together. The couple's oldest daughter, T., age 14, and her newborn baby lived with the Johnsons because, according to Hurt, her home "wasn't fit for [a] newborn."

On June 16, 2022, Hurt, T., and T.'s newborn went to the Johnsons' home, where the Johnsons were enjoying drinks on their front porch. Christian joined them after work later that evening.

At some point, T. changed her baby's diaper and left the dirty diaper on the porch. Christian told T. to not be a "dirty bitch" and to put the diaper in the trash. The Johnsons intervened on T.'s behalf. Christian responded that T. is his daughter and that he was "going to correct" her.

Johnson and Christian began arguing, and Johnson told Christian to get off his porch and leave. Hurt dragged Christian off the Johnsons' porch. Johnson testified that, while exiting the porch, Christian threatened to "shoot this bitch up," referring to the Johnsons' house.

The argument among the adults continued onto the front lawn and down the street. After exchanging words, Ms. Johnson swung at Christian, and he returned the punch. Christian struck Ms. Johnson in the face, breaking her glasses, dazing her, and causing her to black out momentarily. Johnson testified that witnessing Christian punch Ms. Johnson made him "mad as fuck" and that he told Christian, "[D]on't hit my fucking wife no more."

The argument continued as Johnson, Ms. Johnson, and Christian proceeded to

4

walk up the street away from the Johnson residence.  Johnson testified that Christian was still acting "belligerent[ly]," wanted to fight, and threatened to shoot at his house.

Believing that Christian would strike Ms. Johnson again, Johnson removed his handgun from his pocket to scare Christian away.  Christian punched Ms. Johnson a second time, knocking her glasses off her face.  Johnson said that he was furious and described his anger as a "12" on a scale of one to ten.  He testified that he fired his gun "in the heat of the moment" and that he did not mean to kill Christian.  Christian died from a single gunshot wound to the chest.

The shooting itself was captured by a surveillance camera, and the footage was played for the jury and admitted into evidence.  Johnson did not dispute that he was the shooter.

**Jury Instructions**

Johnson requested an instruction on voluntary manslaughter because, he argued, he had acted in hot-blooded response to legally adequate provocation.  He asked the court to modify the pattern jury instruction to include battery on a defendant's relative as a form of adequate provocation.  He requested the modified instruction even though the court had made clear its policy never to deviate from the pattern instructions before the discussion began.

In support of the request, defense counsel cited the comment to the pattern jury instruction, which states that "[a] substantial battery upon the defendant, close relatives or friends, may constitute legally adequate provocation even if insufficient to cause fear of imminent death or serious bodily harm."  When the court asked whether counsel "ha[d] a

5

case" to support that proposition, counsel cited *Dorsey v. State*, 29 Md. App. 97 (1975), *aff'd*, 278 Md. 221 (1976), which is cited in the comment, and in which Judge Moylan stated twice, in dicta, that a substantial battery upon a close relative may constitute adequate provocation. *Id.* at 103; *id.* at 105.

The court commented on the age of the *Dorsey* case and questioned why the pattern jury instruction did not mention substantial battery on a close relative as adequate provocation. The court added that it did not "deviate" from the pattern jury instructions. Shortly thereafter, the court asserted: "I never modify a Maryland Pattern Jury Instruction." "[T]he jury instructions are the jury instructions," stated the court. "[I]f I add anything," the court said, "I think it's reversible error."

The court ultimately denied Johnson's request to amend the jury instruction. It read MPJI-Cr 4:17.4 verbatim, omitting any mention of the possibility that a substantial battery on a close relative could constitute adequate provocation:

> The only act that you can find to be adequate provocation under the evidence in this case is [a battery by the victim upon the defendant] [a fight between the victim and the defendant] [an unlawful warrantless arrest of the defendant by the victim, which the defendant knew or reasonably believed was unlawful].

The court allowed Johnson to argue to the jury that the battery against Ms. Johnson was legally adequate provocation. In response, the State argued that the evidence did not permit a finding of legally adequate provocation because a "fist-fight with someone['s]" wife is not listed as a type of provocation in the jury instruction given by the court.

The jury acquitted Johnson of first-degree murder, but convicted him of second-degree murder and the related firearm offenses. The court sentenced Johnson to 40 years of incarceration for second-degree murder; an additional 15 years, the first five without parole, to be served consecutively, for using a handgun in the commission of a crime of violence; and five years without parole, also to be served consecutively, for possession of a firearm after having been convicted of a disqualifying crime. For sentencing purposes, the court merged Johnson's conviction and sentence for wearing, carrying, or transporting a handgun on his person into the conviction and sentence for possessing a regulated firearm after having been convicted of a disqualifying crime. This timely appeal followed.

**QUESTION PRESENTED**

Johnson presents one question for appellate review: "Did the trial court abuse its discretion by refusing to instruct the jury that battery to a relative can constitute legally adequate provocation for voluntary manslaughter, solely because the court had a rigid policy of never modifying the Maryland Pattern Jury Instructions?"

Because we hold that the trial court's failure to modify the jury instruction was both an error of law and an abuse of discretion, we answer this question in the affirmative. Johnson's second-degree murder conviction is vacated, as is his conviction for using a handgun during a crime of violence. This case is remanded to the Circuit Court for Baltimore City for a new trial on those charges.

STANDARD OF REVIEW

"[Maryland] Rule 4-325(c) requires a trial court to give a requested [jury] instruction when (1) it 'is a correct statement of the law'; (2) it 'is applicable under the facts of the case'; and (3) its 'content . . . was not fairly covered elsewhere in the jury instruction[s] actually given.'" *Hayes v. State*, 247 Md. App. 252, 288 (2020) (quoting *Thompson v. State*, 393 Md. 291, 302 (2006)). "Unless the trial court has made an error of law, we review its decision to give a jury instruction for abuse of discretion." *Id.* "'[W]e review without deference . . . whether the jury instruction was a correct statement of the law.'" *Carter v. State*, 236 Md. App. 456, 475 (2018) (quoting *Seley-Radtke v. Hosmane*, 450 Md. 468, 482 (2016)).

## DISCUSSION

In this case, the State concedes that the content of the proposed instruction was not fairly covered elsewhere in the jury instructions actually given. The State, however, does not concede that the proposed instruction was a correct statement of the law. Nor does the State concede that the proposed instruction was applicable under the facts of the case (i.e., that Johnson generated sufficient evidence to support the requested instruction).

We shall discuss each of the disputed points in turn.

### A. The Proposed Instruction Was a Correct Statement of the Law

For provocation "to be 'adequate,' it must be 'calculated to inflame the passion of a reasonable [person] and tend to cause [that person] to act for the moment from passion rather than reason.'" *Carter v. State*, 66 Md. App. 567, 572 (1986) (quoting Rollin

Perkins, *Perkins on Criminal Law* at 56 (2d ed. 1969)); *accord Girouard v. State*, 321 Md. at 539.

The Maryland courts sometimes set out a list of examples of circumstances in which the defense of provocation applies. *See, e.g.*, *Girouard v. State*, 321 Md. at 538 ("(1) discovering one's spouse in the act of sexual intercourse with another;[3] (2) mutual combat; (3) assault and battery[]"); *State v. Faulkner*, 301 Md. 482, 486 (1984) (same); *Davis v. State*, 204 Md. 44, 54 (1954) (including an illegal arrest with "sudden combat, assault and battery upon one's person, and the sight of one's wife in the act of adultery, as the standard situations in which a homicide arising out of the agitation stirred up in ordinary men by them will be manslaughter, rather than murder").

Often, however, the Maryland courts add that the defense applies to a hot-blooded response to "anything the natural tendency of which is to produce passion in ordinary [people]." *See, e.g.*, *Christian v. State*, 405 Md. at 323; *accord State v. Rich*, 415 Md. 567, 582 (2010); *Adams v. State*, 192 Md. App. 469, 500 (2010); *Wood v. State*, 209 Md. App. 246, 304 (2012); *see also Lang v. State*, 6 Md. App. 128, 131 n.3 (1969).[4]

---

[3] Since 1997, "[t]he discovery of one's spouse engaged in sexual intercourse with another does not constitute legally adequate provocation for the purpose of mitigating a killing from the crime of murder to voluntary manslaughter even though the killing was provoked by that discovery." Md. Code Ann. (2002, 2021 Repl. Vol.), § 2-207(b) of the Criminal Law Article.

[4] But since 2021, "[t]he discovery or perception of, or belief about, another person's race, color, national origin, sex, gender identity, sexual orientation, religious beliefs, or disability, whether or not accurate, does not constitute legally adequate provocation to mitigate a killing from the crime of murder to manslaughter." Md. Code Ann. (2002, 2021 Repl. Vol.), § 2-207(c) of the Criminal Law Article. The State says

(continued)

On several occasions, Maryland courts have stated, in dicta, that a battery on a close relative can be adequate provocation to reduce murder to manslaughter. Most notably, in *Dorsey v. State*, 29 Md. App. at 103, this Court acknowledged the potential adequacy of vicarious provocation.

*Dorsey* was decided in the immediate aftermath of *Mullaney v. Wilbur*, 421 U.S. 684 (1975), which held that the Due Process Clause of the Fourteenth Amendment "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* at 704. *Mullaney* invalidated the common-law rule under which a defendant who had been charged with murder was presumed to have acted with malice aforethought. In light of *Mullaney*, the prosecution must prove, beyond a reasonable doubt, that the defendant committed all of the elements of the crime of murder. *See id*. at 700-01. This obligation requires the prosecution to negate the argument that "the homicide was committed in the heat of passion." *See id*. at 701.

In *Dorsey*, the trial court had instructed the jury that "'[t]he burden is on the defendants to show the existence of mitigation, excuse, or justification which will reduce the offense to manslaughter or not guilty.'" *Dorsey v. State*, 29 Md. App. at 99. "[T]hat instruction was clearly improper under *Mullaney v. Wilbur*." *Id.* Consequently, the *Dorsey* Court turned to the question of whether the "improper instruction" was

---

that the statute prohibits the so-called "gay panic" defense, though it is obviously quite a bit broader than just that.

"harmless." *Id.* To address that question, the *Dorsey* Court asked, first, whether the appellants were "entitled to an instruction on mitigation" and whether "the issue of mitigation was fairly generated in [the] case." *Id.* at 100.

In *Dorsey*, Dorsey and her co-defendant, Wilson, "apparently lived together as man and wife." *Id*. at 102. The victim allegedly pushed Dorsey down a flight of stairs. *Id.* at 102. After Dorsey informed her husband, Wilson, of what had occurred, she, Wilson, and others went to the victim's house, where they proceeded to assault him. *Id.* at 102-03. During the ensuing struggle, Wilson stabbed the victim to death. *Id.* at 103.

Writing for the *Dorsey* Court, Judge Moylan began by stating: "If [the victim] . . . unnecessarily battered the appellant Dorsey by throwing her down the stairs, the law would indicate that this would be at least a jury question with respect to legally adequate provocation." *Id.* at 103. Quoting a treatise, Judge Moylan wrote: "'While a trivial blow is not sufficient, a substantial battery upon the defendant or a close relative will justify the reduction of an intentional homicide to voluntary manslaughter.'" *Id.* (quoting Roy Moreland, *The Law of Homicide* 76 (1952)).

The *Dorsey* Court recognized that Wilson's claim of adequate provocation was "more tenuous" than that of Dorsey, his wife: "If he was provoked, he was provoked vicariously out of regard for the appellant Dorsey." *Id.* at 104. The *Dorsey* Court expressly declined to decide "[w]hether such vicarious provocation can ever be deemed legally adequate[.]" *Id.* Instead, the *Dorsey* Court assumed that "Wilson was provoked by legally adequate provocation." *Id.* at 104-05. "In this regard," the *Dorsey* Court cited

11

another treatise for the proposition that vicarious provocation "may at least be a jury

issue":

> "Just as a reasonable man may be provoked by some sorts of conduct which
> inflict injury upon himself, so too he may be provoked by the same sort of
> conduct which causes injury to his close relatives.  It has been held that the
> rule does not extend beyond close relatives to more distant relatives and
> friends, but in view of the modern tendency to leave questions of the
> reasonableness of a provocation to the jury, there ought not to be any
> absolute rule that injuries, however grievous, to friends, however close, can
> never constitute a reasonable provocation."

*Id.* at 105 (quoting Wayne LaFave and Austin W. Scott, *Criminal Law* 577 (1972)).

"Even granting, however, that the evidence generated a fair jury question on the

issue of mitigation," the *Dorsey* Court held that "the jury's verdict of guilty of murder in

the first degree cured any error in the instructions."  *Id.* at 107.  Quoting another case

decided in the immediate aftermath of *Mullaney v. Wilbur*, the *Dorsey* Court explained:

> "[A]ny error in instructing as to the allocation of the burden of persuasion
> on the subject of mitigation (such mitigation, for purposes of holding the
> homicidal mens rea down to the manslaughter level, being fairly an issue in
> the case) will have been cured by a verdict of murder in the first degree.
> The evil aimed at by Mullaney v. Wilbur, where the issue is manslaughter
> versus murder, is that a presumption of malice unfairly relieves the State of
> the burden of proving non-mitigation (mitigation being fairly an issue in the
> case).  Where the ultimate verdict is that of murder in the second degree,
> the presumption may, therefore, have been pivotal.  Where, on the other
> hand, the verdict is murder in the first degree, the State will have proved
> every element, including the negating of hot blood, beyond a reasonable
> doubt and due process will not have been offended."

*Id.* (quoting *Evans v. State*, 28 Md. App. 640, 658 (1975)).

In summary, in the view of the *Dorsey* Court, the verdict of guilt beyond a

reasonable doubt on the charge of first-degree murder meant that the trial court had

committed harmless error in instructing the jury that the appellants had the obligation to

12

prove the defense of mitigation. As a consequence, the *Dorsey* Court said that it did not need to decide whether an assault on a close relative could amount to adequate provocation to reduce murder to manslaughter.

In *Girouard v. State*, 321 Md. at 534, the Court considered whether "the types of provocation sufficient to mitigate the crime of murder to manslaughter should be limited to the categories . . . heretofore recognized, or whether the sufficiency of the provocation should be decided by the factfinder on a case-by-case basis." The Court specifically considered "whether words alone are provocation adequate to justify a conviction of manslaughter rather than one of second degree murder." *Id.*

The Court began by enumerating the "facts that may mitigate what would normally be murder to manslaughter." *Id.* at 538. By way of "example," the Court cited: "(1) discovering one's spouse in the act of sexual intercourse with another; (2) mutual combat; (3) assault and battery." *Id.* In the next sentence, the Court added: "There is also authority recognizing injury to one of the defendant's relatives or to a third party, and death resulting from resistance of an illegal arrest as adequate provocation for mitigation to manslaughter." *Id.* (citing 40 C.J.S. *Homicide* § 48, at 913 (1944) and 40 C.J.S. *Homicide* § 50, at 915-16 (1944)).[5] "Those acts," wrote the Court, "mitigate homicide to manslaughter because they create passion in the defendant and are not considered the product of free will." *Id.* The Court's reference to "those acts" could be

---

[5] The Court did not mention that in *Davis v. State*, 204 Md. at 54, it had previously held that an illegal arrest may also be adequate provocation to reduce murder to manslaughter.

read to include each of the previously enumerated acts, including "injury to one of the defendant's relatives or to a third party." *Id.*

On the merits, the Court rejected the contention that a domestic argument ending in the death of a spouse can result in a conviction of manslaughter. *Id.* at 542. The Court explained:

> [S]ocial necessity dictates our holding. Domestic arguments easily escalate into furious fights. We perceive no reason for a holding in favor of those who find the easiest way to end a domestic dispute is by killing the offending spouse.

*Id.*

The Court concluded by stating: "We will leave to another day the possibility of expansion of the categories of adequate provocation to mitigate murder to manslaughter." *Id.*

In addition to *Girouard* and *Dorsey*, many other Maryland appellate opinions have briefly stated, in dicta, that an attack on a friend or close relative may be adequate provocation. *See, e.g.*, *Christian v. State*, 405 Md. at 323 (citing *Girouard v. State*, 321 Md. at 538, for the proposition that "the defense" of adequate provocation "may be raised in cases involving . . . witnessing, or being aware of, an act causing injury to a relative or a third party"); *Wood v. State*, 209 Md. App. at 304 (citing *Christian v. State*, 408 Md. at 323, for the proposition that "appellate courts have recognized the defense of adequate provocation 'in cases involving . . . witnessing, or being aware of, an act causing injury to a relative or third party'"); *Wilson v. State*, 195 Md. App. 647, 687 (2010) (Moylan, J.) (stating that "a possible fifth variety of legally adequate provocation is a battery on a

14

close relative"), *vacated on other grounds*, 422 Md. 533 (2011); *Stevenson v. State*, 163 Md. App. 691, 694 n.3 (2005) (citing *Girouard v. State*, 321 Md. at 538, for the proposition that "'injury to one of the defendant's relatives or to a third party'" is one of the "sources of adequate provocation"), *rev'd on other grounds sub nom. Christian v. State*, 405 Md. 306 (2008); *Tripp v. State*, 36 Md. App. 459, 465 (1977) (Moylan, J.) (including "injury to close relatives" as a "variety of provocation"), *abrogated on other grounds*, *Sparks v. State*, 91 Md. App. 35, 55 n.21 (1992).

The dicta in these Maryland cases are not an isolated phenomenon. Outside of Maryland, the authorities uniformly recognize that, at common law, a substantial assault on a close relative may qualify as the kind of legally adequate provocation that will reduce the offense of murder to manslaughter.

The State itself cites Carlton J. Patrick & Debra Lieberman, *Not from a Wicked Heart: Testing the Assumptions of the Provocation Doctrine*, 18 Nev. L.J. 33, 35 (2017), for the proposition that "witnessing an attack on a friend or a relative" has been one of the "common forms" of legally adequate provocation since "the 1800s." The State also cites Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 88-97 (3d ed. 1982), for the proposition that the "murder or serious injury of [the defendant's] close relative" "may" constitute legally adequate provocation. And the State cites Charles E. Torcia, 2 *Wharton's Criminal Law* § 163 (15th ed. 1994), for the proposition that the "killing or harming" of a relative may constitute adequate provocation, as may "tak[ing] up the cause of a friend, who has been worsted in a fight, and kill[ing] that friend's antagonist."

15

Other academic texts and commentaries include battery upon a relative as a recognized class of adequate provocation. For example, Wayne R. LaFave & Jens David Ohlin, *Criminal Law* at 1011 (7th ed. 2023) states: "[I]t is often held that a reasonable person may be provoked into a passion when the person (or a close relative) is hurt by violent physical blows." Gerald G. Ashdown, et al., *Criminal Law Cases and Comments* at 559 (10th ed. 2017) states: "[i]t is generally held that certain acts committed by one against a close relative of the slayer constitute sufficient provocation." Paul Robinson, *Criminal Law* at 710 (1997), cites *Girouard v. State*, 321 Md. at 538, for the assertion that the "common situations" warranting mitigation include "injury or serious abuse of a close relative of the defendant[.]" And Baltimore attorney and author Lewis Hochheimer stated that the facts amounting to provocation may include "[a]n injury to a near relation" of the defendant. *See* Lewis Hochheimer, *The Law of Crimes and Criminal Procedure*, ch. 55, § 346, at 379-80 (2d ed. 1904).

Where the battery by the deceased was upon someone related to the defendant by blood or marriage, other states uniformly have held that a voluntary manslaughter instruction is proper. *See, e.g.*, *State v. Bishop*, 543 A.2d 105, 110 (N.J. Super. Ct. App. Div. 1988) (holding that defendant was entitled to a jury instruction on manslaughter where some evidence showed that "his nephew was being victimized in [a] fight" and that the nephew "was losing the fight"); *State v. Johnson*, 6 S.W.2d 898, 899-900 (Mo. 1928) (holding that the defendant was entitled to an instruction on manslaughter where some evidence showed that he witnessed the deceased slap his wife and knock her down and heard her call for help); *State v. Rennison*, 267 S.W. 850, 852 (Mo. 1924) (holding

16

that the defendants "were entitled to an instruction on manslaughter" where the evidence showed that the decedent made a violent, unprovoked assault" on their father); *Commonwealth v. Berry*, 336 A.2d 262, 265 (Pa. 1975) (holding that "[t]he arrival of the son upon the scene within seconds of the culmination of the attack, finding his mother prostrate on the ground, and hearing from her the series of events that led to this condition would be the type of circumstances that a jury could conclude might occasion a reasonable man to become so impassioned as to cloud his reason and render him incapable of cool reflection"); *Maria v. State*, 28 Tex. 698, 711 (1866) (holding that the trial court "should have instructed the jury that the whipping of the child of the accused by the deceased was a sufficient legal provocation to reduce the offense from murder to manslaughter"); *Toler v. State*, 260 S.W. 134, 137 (Tenn. 1924) (holding that learning that the deceased had seduced and sexually assaulted defendant's daughter warranted a voluntary manslaughter instruction); *see also State v. Coyle*, 574 A.2d 951, 967 (N.J. 1990) (stating that "a third person can be provoked when a close friend suffers injury or abuse under circumstances that would constitute adequate provocation had the third person been the object of the abuse"); *People v. Rice*, 184 N.E. 894, 896 (Ill. 1933) (remarking that "the slapping of [the defendant's] child was provocation enough to engender a dangerous passion to kill"). The State cites no authority to the contrary.

These authorities demonstrate that, at common law, a substantial battery on a close relative of the defendant could serve as legally adequate provocation. In cases like *Dorsey* and *Girouard*, the Maryland courts acknowledged this longstanding criminal rule, but did not have the occasion to apply it. The common-law rule, however, is no less a

17

rule merely because no reported decision of a Maryland court has yet to apply it to the specific facts of a specific case. It is a correct statement of the law—specifically, of the common law of homicide—that a substantial battery on a close relative of the defendant may qualify as legally adequate provocation that will justify a conviction of manslaughter rather than murder. The circuit court erred in declining to instruct the jury to that effect.[6]

The State argues that this Court should not "expand" the forms of legally adequate provocation available as a defense to murder. We disagree with the way in which the State has framed the issue.

We are not "expanding" the forms of legally adequate provocation. In no reported decision has any Maryland appellate court ever held that the only forms of legally adequate provocation are those enumerated in MPJI-Cr 4:17.4 (3d. ed. 2024): "a battery by the victim upon the defendant," "a fight between the victim and the defendant," or "an unlawful warrantless arrest of the defendant by the victim, which the defendant knew or reasonably believed was unlawful." Nor has any Maryland appellate court ever held that a substantial battery on a close relative cannot be legally adequate provocation. To the contrary, the Maryland courts have repeatedly declined to delineate the boundaries of legally adequate provocation, by stating that it includes "anything the natural tendency of which is to produce passion in ordinary [people]." *See, e.g.*, *Christian v. State*, 405 Md. at 323; *State v. Rich*, 415 Md. at 582; *Adams v. State*, 192 Md. App. at 500; *Wood v.*

---

[6] At trial and on appeal, the State has not disputed that Ms. Johnson qualifies as a "relative." Consequently, we do not consider whether she does or does not.

*State*, 209 Md. App. at 304; *see also Lang v. State*, 6 Md. App. at 131 n.3.  The Maryland courts have also stated, in dicta, that a substantial battery on a close relative may be legally adequate provocation.  *Girouard v. State*, 321 Md. at 538; *see also Wilson v. State*, 195 Md. App. at 687.  And in *Dorsey v. State*, 29 Md. App. at 104-05, this Court went so far as to assume that a substantial battery on the defendant's wife could be legally adequate provocation.

In short, before today, no Maryland appellate court has ever been called upon to decide whether a substantial battery on a close relative can be legally adequate provocation.  By deciding that it can, we are not expanding the boundaries of legally adequate provocation; we are resolving an open question about where those boundaries lie.

The State also argues that, "[c]onstruing *Girouard* and *Dorsey* as establishing battery on a relative as a form of legally adequate provocation, as opposed to simply being a recognition of secondary authority to that effect would be to treat those decisions as having sub silentio expanded the Maryland common law."  We do not construe *Dorsey* or *Girouard* to "establish[]" that a substantial battery on a close relative may be legally adequate provocation.  We grant that the statements in *Dorsey* and *Girouard* are dicta.  We hold that a substantial battery on a close relative may be legally adequate provocation because that is the longstanding common-law rule, acknowledged in *Dorsey* and *Girouard*, followed uniformly in cases throughout the United States, and recognized in numerous treatises, including treatises cited by the State in its brief.  Were we to hold otherwise, our decision would be a complete outlier.  And, again, we are not, as the State

19

says, "expand[ing]" the common law; we are deciding an open question about where the boundaries of the common law lie.

Finally, the State argues that we should leave it to the General Assembly to decide whether a substantial battery on a close relative or friend may be legally adequate provocation. According to the State, "[r]ecognizing battery on a relative as a form of legally adequate provocation would be no simple matter," because "[i]t leaves open many unanswered questions, including what degrees of blood relation would be covered, how close the familial relationship must be . . . , and whether the doctrine applies to non-relatives, such as close friends or long-time romantic partners." The short answer to the State's contention is that none of those issues seem to have posed insuperable problems in the many cases from other states that hold that a substantial battery on a close relative or friend may be legally adequate provocation. More broadly, the common-law process of adjudication is quite capable of defining the limits of the doctrine in appropriate cases.[7]

---

[7] In arguing that we should leave the question to the legislature, the State observes that the General Assembly has enacted legislation to limit what qualifies as legally adequate provocation. For example, in 2021, the General Assembly passed § 2-207(c) of the Criminal Law Article, which states that "[t]he discovery or perception of, or belief about, another person's race, color, national origin, sex, gender identity, sexual orientation, religious beliefs, or disability, whether or not accurate, does not constitute legally adequate provocation to mitigate a killing from the crime of murder to manslaughter." The State appears not to recognize that, by enacting legislation to limit what can qualify as legally adequate provocation, the General Assembly is tacitly rebutting the State's contention that legally adequate provocation consists only of an assault on the defendant, mutual affray, or an illegal arrest.

In summary, the requested instruction—that a substantial battery on a close relative may be legally adequate provocation—was a correct statement of the law.

## B.  The Proposed Instruction Was Applicable Under the Facts

To be entitled to the instruction that he requested, Johnson was required to show "some evidence" of each element of the rule of provocation.  *See, e.g.*, *Lewis v. State*, 262 Md. App. 251, 287 (2024); *McKay v. State*, 90 Md. App. 204, 213-14 (1992).  "The 'some evidence' standard is a 'fairly low hurdle[,]'" *Hollins v. State*, 489 Md. 296, 311 (2024) (quoting *Arthur v. State*, 420 Md. 512, 526 (2011)), as it is satisfied by the existence of any evidence, from any source, and from either party, that, if believed, would supply a factual basis for the instruction.  *See, e.g.*, *Hollins v. State*, 489 Md. at 311.

> *Some evidence* is not strictured by the test of a specific standard.  It calls for no more than what it says—'some,' as that word is understood in common, everyday usage.  It need not rise to the level of 'beyond a reasonable doubt' or 'clear and convincing' or 'preponderance.'  The source of the evidence is immaterial; it may emanate solely from the defendant.

*Id.* (quoting *Dykes v. State*, 319 Md. 206, 216-17 (1990)).

Whether the evidence is sufficient "'to generate the desired instruction is a question of law' and thus is reviewed de novo[.]"  *Hollins v. State*, 489 Md. at 309 (quoting *Bazzle v. State*, 426 Md. 541, 550 (2012)); *accord Covel v. State*, 258 Md. App. 308, 324 (2023).  In evaluating the sufficiency of the evidence, we review the evidence in the light most favorable to the accused, Johnson.  *Hollins v. State*, 489 Md. at 309.  Ultimately, if the amount of evidence produced at trial "would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired[,]" the

requested instruction is sufficiently applicable to the facts of a case. *Dishman v. State*, 352 Md. 279, 292 (1998).

With this standard in mind, we turn to the substance of the rule of provocation and the evidence presented in this case. To mitigate murder to voluntary manslaughter:

1. There must have been adequate provocation;

2. The killing must have been in the heat of passion;

3. It must have been a sudden heat of passion – that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool; [and]

4. There must have been a causal connection between the provocation, the passion, and the fatal act.

*Girouard v. State*, 321 Md. at 539; *see also Sims v. State*, 319 Md. 540, 551 (1990); *Glenn v. State*, 68 Md. App. 379, 406 (1986); *Whitehead v. State*, 9 Md. App. 7, 10-11 (1970).

In this case, the State contests only the first element. It argues that, "if Maryland does recognize battery on a relative as a form of legally adequate provocation, Johnson did not put forth some evidence from which to conclude that the battery was significant enough to constitute legally adequate provocation."

We turn to the question of what is a "substantial" battery. Judge Moylan has cautioned that "'a trivial blow is not sufficient'" to "'justify the reduction of an intentional homicide to voluntary manslaughter.'" *Dorsey v. State*, 29 Md. App. at 103 (quoting Roy Moreland, *The Law of Homicide*, *supra*, at 76); *accord Wilson v. State*, 195 Md. App. at 690. Instead, as "'illustrations of the type of injury'" that would qualify as a

22

"'substantial battery'" that would justify the reduction of the offense to manslaughter, Judge Moylan cited "'[a] clout with a heavy hickory stick and a blow upon the back of the head with a pistol.'" *Dorsey v. State*, 29 Md. App. at 103 (quoting Roy Moreland, *The Law of Homicide*, *supra*, at 76); *accord Wilson v. State*, 195 Md. App. at 690.

Nonetheless, the use of "'a weapon is not indispensable'" for there to have been a "substantial battery" of the sort that will reduce the offense to manslaughter. *Dorsey v. State*, 29 Md. App. at 104 (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, *supra*, 60); *accord Wilson v. State*, 195 Md. App. at 690. Thus, for example, in *Dorsey*, this Court assumed that the defendant "was provoked by legally adequate provocation" when the victim pushed his wife down the stairs. *Dorsey v. State*, 29 Md. App. at 104-05. And, as the State acknowledges itself in its brief, "'even a blow with the fist may be sufficient to reduce an intentional killing to manslaughter, particularly if it is a blow in the face or a "staggering" blow.'" *Dorsey v. State*, 29 Md. App. at 104 (quoting Perkins & Boyce, *Criminal Law*, *supra*, at 60); *accord Wilson v. State*, 195 Md. App. at 690; LaFave & Ohlin, *Criminal Law*, *supra* (stating that "a violent, painful blow, with fist or weapon will ordinarily" be adequate provocation).

Johnson met the minimal burden of producing "some evidence" in support of his contention that the battery on Ms. Johnson amounted to legally adequate provocation. The evidence showed that Christian struck Ms. Johnson in the face, breaking her glasses, dazing her, and causing her to black out momentarily. Moments later, Christian hit Ms. Johnson again, knocking her glasses off her face. All the while, Christian was acting belligerently, cursing, and threatening to shoot up the Johnsons' home. Johnson was

23

already enraged after the first punch, and he warned Christian not to hit his wife again. When Christian disregarded this warning and struck Ms. Johnson again, Johnson lost his composure (his anger, he said, was 12 on a scale of one to 10) and fired the fatal shot.

In arguing that Johnson did not come forward with "some evidence" in support of his claim of a "substantial" battery, the State employs a divide-and-conquer strategy. The State focuses on the second blow, which, it argues, does not qualify as a "substantial battery." The State contends that we should disregard the first blow because, the State says, it was not "the blow that provoked Johnson to shoot Christian to death."

The State's approach is unconvincing. The two batteries were part of a series: the second blow closely followed the first. Johnson, who was already enraged after the first battery, warned Christian not to hit his wife again. When Christian defied the warning and hit Ms. Johnson hard enough to knock her glasses off her face, Johnson lost his composure. This is "some evidence" of a "substantial battery" on Johnson's wife.

### C. The Court Abused its Discretion in Refusing to Exercise Discretion

We have decided that Johnson's requested instruction was a correct statement of the law. We have also decided that Johnson generated "some evidence" of a "substantial battery" on his wife, so that the requested instruction was applicable under the facts of the case. The State does not contend that the requested instruction was fairly covered elsewhere in the jury instructions actually given. Therefore, the circuit court erred in refusing to instruct the jury that a substantial battery on a close relative can be legally adequate provocation that will reduce murder to voluntary manslaughter. *See, e.g.*, *Fleming v. State*, 373 Md. 426, 439 (2003); *Roach v. State*, 358 Md. 418, 434 (2000).

24

But in addition to that error of law, the court abused its discretion because it employed an inflexible policy of never departing from the pattern jury instructions. *Hollins v. State*, 489 Md. at 317; *see also Janey v. State*, 166 Md. App. 645, 666 (2006) (stating that "it would be an abuse of discretion for a trial judge to apply a uniform policy of rejecting all requested instructions that are not covered by some pattern instruction[]").

Except where Rule 4-325(c) requires a court to give certain instructions upon request, the decision about whether to give a particular jury instruction is generally a matter of discretion. The standard of review for abuse of discretion is highly deferential. *See, e.g.*, *North v. North*, 102 Md. App. 1, 14 (1994) (stating that, for the court to have abused its discretion, "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable"). Nonetheless, "[t]he failure to exercise discretion when its exercise is called for is an abuse of discretion." *Johnson v. State*, 325 Md. 511, 520 (1992).

Thus, for example, in *Hollins v. State*, 489 Md. at 316, the Court held that a trial judge had abused her discretion in refusing to give a requested instruction simply because it was not a pattern jury instruction. Similarly, in *Gunning v. State*, 347 Md. 332, 351 (1997), the Court held that a trial judge had abused his discretion because he categorically refused to give a specific instruction in any case.

25

In this case, the trial court stated that it did not "deviate" from the pattern jury instructions and that it "never modif[ies] a Maryland Pattern Jury Instruction."[8] The court justified its refusal by asserting, incorrectly, that it was "reversible error" to "add anything" to pattern jury instructions. The court's failure to exercise discretion is itself an abuse of discretion.[9]

Contrary to the circuit court's view, the pattern jury instructions permit, and sometimes require, the modification of the instructions or the creation of new instructions. The introduction to the criminal pattern jury instructions itself expressly recognizes that it may become necessary "to modify instructions to accommodate the unique circumstances of a particular case" and even "to draft instructions that are not covered by those in this edition." MPJI-Cr, Introduction.

As this Court has explained:

> [T]he pattern instructions are not comparable to rules of evidence. They serve as a valuable resource tool, but they do not necessarily fit every conceivable situation. Therefore, they cannot be followed without consideration of the particular circumstances of each case.

---

[8] The court was evenhanded in its refusal to deviate from the pattern instructions. The State requested that the pattern instruction on the use-of-handgun charge be amended to explicitly include the second-degree murder offense. The court denied the request, stating, "[t]hat's the way the Maryland Pattern Jury Instruction is, I'm not changing it."

[9] We acknowledge that in a few, highly sensitive areas a court may err in departing from the language of a pattern jury instruction. For example, in *Thompson v. State*, 371 Md. 473, 486 (2002), the Court held that the circuit court erred in giving an *Allen* charge that deviated substantially from the pattern instruction and from the American Bar Association standards. Similarly, in *Ruffin v. State*, 394 Md. 355, 373 (2006), the Court held that, "in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI-CR 2:02," the pattern jury instructions on those subjects.

*Green v. State*, 119 Md. App. 547, 562 (1998).

In fact, sometimes the pattern jury instructions are incomplete. *See, e.g.*, *Six-Flags America, L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 591 n.8 (2020). That was the case here. "When," as in this case, "the evidence generates an issue that is not covered by a pattern instruction, we must count on the court to incorporate relevant and valid legal principles gleaned from the case law." *Green v. State*, 119 Md. App. at 562; *accord Janey v. State*, 166 Md. App. at 666; *Boone v. American Mfrs. Mut. Ins. Co.*, 150 Md. App. 201, 232 (2003). The circuit court abused its discretion in refusing to take those steps in this case.

## CONCLUSION

The circuit court erred and abused its discretion in declining to instruct the jury that a substantial battery on a close relative can be legally adequate provocation that will reduce the offense of murder to manslaughter. Consequently, we must reverse Johnson's conviction for second-degree murder. Because we reverse the conviction for second-degree murder, a crime of violence, we must also reverse the conviction for using a firearm in the commission of a crime of violence: without a conviction for a crime of violence, Johnson cannot be guilty of using a firearm in the commission of a crime of violence.

We do not, however, disturb the convictions for possession of a regulated firearm after having been convicted of a disqualifying crime, and wearing, carrying, or transporting a handgun on the person. The court's error had no effect on those convictions, and Johnson does not argue otherwise.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND VACATED IN PART; CONVICTIONS FOR SECOND-DEGREE MURDER AND USE OF A FIREARM IN THE COMMISSION OF A CRIME OF VIOLENCE VACATED; CONVICTIONS FOR POSSESSION OF A REGULATED FIREARM AFTER HAVING BEEN CONVICTED OF A DISQUALIFYING CRIME AND WEARING, CARRYING, OR TRANSPORTING A FIREARM ON ONE'S PERSON AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. FOUR-FIFTHS OF THE COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE; ONE-FIFTH OF THE COSTS TO BE PAID BY APPELLANT.**